UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| MARIAN CORBETT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHMOND METROPOLITAN | ) | |
| TRANSPORTATION AUTHORITY, | ) | Civil Action No. 3:16cv470 |
| | ) | |
| ANGELA GRAY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOI DEAN, | ) | |
| | ) | |
| *Defendants.* | ) | |

FILED

JUN 2 4 2016

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## COMPLAINT

Plaintiff Marian Corbett, by counsel, files this Complaint against the Defendants, Richmond Metropolitan Transportation Authority, Angela Gray, and Joi Dean, and, in support thereof, states as follows:

### Nature of Claims

1.    This is an action for equitable relief, declaratory relief, compensatory damages, and punitive damages to redress unlawful discriminatory and retaliatory practices during the course of, and in the termination of, Plaintiff's employment in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* (the "ADA"). In addition, this is an action for equitable and declaratory relief, back pay and other monetary damages, liquidated damages, and other relief to redress the Defendants'

interference with Plaintiff's rights under the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.* (the "FMLA"), and the Defendants' retaliation against the Plaintiff for exercising her rights under the FMLA.

### Jurisdiction, Venue, and Administrative Proceedings

2.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, 29 U.S.C. §2617 (a) (2), and 42 U.S.C. §12117. The demand for declaratory relief is authorized by 28 U.S.C. §§2201 and 2202.

3.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging discrimination on the basis of her disability and retaliation on or about August 21, 2015. The EEOC issued Plaintiff a Right-to-Sue letter on March 30, 2016.

4.     Plaintiff has initiated this action within 90 days of the date that Plaintiff received the Right to Sue letter.

5.     This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. §1391(b). The actions complained of took place in this judicial district; evidence and employment records relevant to the allegations are maintained in this judicial district; Plaintiff would be employed in this judicial district but for the unlawful actions and practices of Defendants; and Defendants are present and regularly conduct affairs in this judicial district.

### Parties

6.      Plaintiff is a resident of Richmond, Virginia. At all times relevant to the matters alleged herein, Plaintiff was an "employee" within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4).

7.      At all times relevant to the matters alleged herein, Plaintiff was a "qualified individual with a disability" within the meaning of the ADA.

8.      Defendant RMTA is a political subdivision created by an Act of the General Assembly, with powers and responsibilities set out at Va. Code § 33.2-2900, *et seq*. RMTA is governed by a board (the "Board") whose members are appointed by the Boards of Supervisors of Chesterfield and Henrico Countries, and by the Mayor of the City of Richmond, with the approval of the Richmond City Council. RMTA is primarily funded through the issuance of its own revenue bonds, which are paid by fees, tolls, rents, rates, and other charges levied by RMTA for the use of its facilities.

9.      RMTA is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and is subject to the provisions of the ADA. RMTA is also a public agency within the meaning of 29 U.S.C. §2611(4)(A)(iii) and 29 U.S.C. §203(x) and is therefore an employer within the meaning of the FMLA.

10.     Defendants Angela Gray ("Gray") and Joi Dean ("Dean") are each persons who acted in the interest of RMTA with respect to Corbett and are therefore employers within the meaning of 29 U.S.C. §2611(4)(A)(ii).

3

## Factual Allegations

11.     In 2002, RMTA hired Corbett as an administrative assistant to the then-General Manager, Michel Berry ("Berry").

12.     Corbett performed her duties in a competent and satisfactory manner during her employment with RMTA. During her tenure, RMTA gave Corbett positive performance evaluations. Until shortly before Corbett requested medical leave, RMTA paid her performance bonuses. Corbett enjoyed working for RMTA and, by objective standards, she met and exceeded RMTA's legitimate expectations for her performance.

13.     In July 2008, following a serious personal loss, Corbett was diagnosed with depression, and she suffered from anxiety and panic attacks related to her depression. Corbett's doctors had prescribed medication to keep her symptoms under control; however, high levels of stress or emotional trauma could and did exacerbate Corbett's symptoms. Corbett's depression, anxiety, and panic disorders have substantially affected her cognitive function, thinking, and concentration, substantially impaired her ability to interact with others, interfered with her ability to sleep, and caused her numerous problems in simply caring for herself, all of which are major life activities. Corbett has suffered from these impairments for many years and will likely continue to suffer from them for the rest of her life.

14.     At the end of 2012, Berry retired, and in February 2013, Gray was hired as RMTA's new General Manager. Corbett was to be Gray's

4

administrative assistant and report to Gray as she had previously reported to Berry.

15.     In September 2013, RMTA contracted with Defendant Dean. From September 2013 until August 2014, Dean was Corbett's peer-level co-worker. Dean promoted herself as having a juris doctor degree from William & Mary Law School but, on information and belief, Dean had never been admitted to the practice of law in any state.

16.     Also in September 2013, Linda McElroy ("McElroy"), who had been responsible for handling public relations matters and other functions related to communications with the RMTA Board resigned.. Following McElroy's resignation, Gray divided McElroy's job duties between Corbett and Dean.

17.     In October 2013, Paulette Smith-Cook ("Smith-Cook") terminated her employment as Director of Administration with RMTA. Following the termination of Smith-Cook's employment, the position was renamed "Chief of Staff" but it was not refilled for some time to follow. At about this time, Gray changed her own title from "General Manager" to "Chief Executive Officer" to make the job sound more important. Notwithstanding the new titles, both jobs remained fundamentally unchanged.

18.     Corbett and Gray worked closely together and within a short while after Gray started work at RMTA, Gray began to request that Corbett

accompany her on social occasions that were unrelated to work. These social occasions included Gray's request that Corbett go furniture shopping with her, meet her for coffee, and to join her for frequent workday lunches and weekend brunches, dinners, and Thanksgiving dinner at Keswick Hall near Charlottesville, Virginia.

19.　　　In addition to these social outings, Gray would often sit at Plaintiff's desk throughout the day and chat about matters unrelated to work. On several occasions Plaintiff and Gray discussed personal matters with each other.　By late 2013, Corbett had confided in Gray about her personal loss and subsequent depression, anxiety, and panic disorder. During those conversations, Corbett told Gray that she had been prescribed Prozac to keep her depression and related symptoms in check.

20.　　　Gray's frequent and lengthy visits to Corbett's desk caused Corbett to get behind in her work and made it difficult for Corbett to accomplish her tasks. Corbett attempted diplomatically to tell Gray that her presence was distracting and counterproductive, but Gray did not get the message. Corbett found herself unable to be as productive as she needed to be but unable to correct the cause of the problem without alienating her superior. The stress of this situation caused Corbett to seek medical attention in May 2014.

21.　　　In May 2014, Corbett spoke to Sheryl Johnson ("Johnson") in Human Resources about Gray's constant presence at her desk and in her

work area. Johnson had been a human resources manager with RMTA since 2001 and knew of Corbett's personal loss and subsequent treatment for depression and related disorders. Corbett told Johnson that Gray's socializing was interfering with Corbett's work and that her inability to make Gray leave was exacerbating her disability. Johnson knew or should have known that Corbett was requesting an accommodation for her disability. Corbett asked Johnson to keep the matter confidential but to find a way to have Gray leave her alone so that she could work.

22.     Although Corbett had asked Johnson to keep the matter confidential, on information and belief, Johnson immediately reported Corbett's concerns directly to Gray.

23.     Gray was offended by Corbett's request. Gray immediately became very distant from Corbett and began closely to scrutinize Corbett's every move and complain about Corbett's work. Corbett had once confided in Gray that her depression and anxiety could be made worse by exactly the sort of stressors that Gray was creating. Rather than accommodating Corbett's disability by reducing work-related stressors, Gray acted intentionally to increase Corbett's work-related stress.

24.     Notwithstanding Gray's scrutiny and criticism, RMTA paid Corbett a bonus in June 2014.

25.     By August 2014, Gray's mistreatment of Corbett led Corbett again to seek medical help from her doctor. Corbett's doctor suggested that

7

Corbett take medical leave because the work related stress at RMTA was exacerbating Corbett's anxiety and depression.

26.     As of the date she sought to take leave, Plaintiff had been employed by RMTA for more than one year and during the preceding one-year period, she had worked in excess of 1250 hours for RMTA. RMTA employed at least 50 employees within 75 miles of the office in which Corbett worked. Corbett was an eligible employee under the FMLA and her request for leave to care for her own serious health condition was protected under 29 U.S.C. § 2612(a)(I)(B) and (C).

27.     Plaintiff went to RMTA Human Resources and requested medical leave and completed the paperwork under the FMLA for medical leave related to depression and anxiety. RMTA approved this request.

28.     Plaintiff was out of work for approximately four weeks on approved FMLA leave. Plaintiff returned to work on September 15, 2014.

29.     When Plaintiff returned to work, she was advised by Sheryl Johnson that RMTA had changed her job duties and reporting requirements while she had been out on leave.

30.     In Corbett's absence, Dean had been named Chief of Staff and Corbett had been demoted to a position that would from then on report to Dean instead of Gray. Corbett's job duties also changed when she returned from leave. Prior to her leave, Corbett had been responsible for communicating directly with the Board and fielding public relations calls

since at least September 2013, but those job duties were taken from her when she returned from leave.

31.      In addition, Gray refused to speak to Plaintiff after Plaintiff returned from medical leave, even though Grey had to walk past Corbett's desk to enter or leave the office. Because she and Corbett had previously shared personal confidences, Gray knew that shunning Corbett would have a particularly marked effect on Corbett's work-related stress and would likely result in the exacerbation of Corbett's depression, anxiety, and panic disorders. Although Gray had a duty to Corbett to accommodate Corbett's disability, Gray deliberately engaged in pervasive conduct that she intended would cause harm and distress to Corbett, inflame Corbett's disability, and which would materially and adversely affect the terms and conditions of Corbett's employment. Gray engaged in this conduct deliberately and to retaliate against Corbett for requesting an accommodation for her disability and for taking medical leave.

32.      Neither Gray nor any other employee of RMTA attempted to engage in any interactive process with Corbett to determine whether her disability had been accommodated or whether any accommodations were needed.

33.      In late October or early November 2014, Corbett was called into a meeting with Dean and Johnson. At the meeting, Dean accused Corbett of "making mistakes." Corbett asked that Dean and Johnson give her some

specifics about these mistakes or provide some supporting documentation, but Dean and Johnson were unable to provide her with any details of the alleged mistakes or any documents that might support the allegations. Dean and Johnson admitted to Corbett that they had no documentation to support the allegation that Corbett had make "mistakes," and Corbett believed that the matter was dropped.

34.     On information and belief, the allegations of "mistakes" raised by Dean and Johnson were purely pretextual and were part of a plan by Defendants to bring about Corbett's termination because she had a disability and because she had taken leave for that disability.

35.     In January 2015, Corbett inadvertently sent an Outlook calendar event to members of the board with an incorrect date and time. Corbett corrected her mistake, but she received a written warning. Other employees of RMTA, including Dean, had made similar mistakes in the past and had not been written up or disciplined for them. The written warning issued to Corbett was a pretext created by the Defendants as a false justification for Corbett's termination.

36.     In mid-January 2015, Dean and Johnson met with Corbett and told Corbett she should take early retirement. Corbett declined the request that she quit. On January 27, 2015, the Defendants gave Corbett a "final written warning" and placed her on a two-day suspension. The "final written warning" was also a pretext.

10

37.     In March 2015, Corbett did not put a telephone call through to Gray because Corbett reasonably believed that Gray was already on a scheduled conference call. Although Gray was able to complete the missed call, on March 31, 2015, Corbett was terminated for the incident and the newly documented pretextual "mistakes."

38.     RMTA intentionally discriminated against Corbett based on her disability and retaliated against her because Corbett had requested the reasonable accommodation that Gray stop chatting at Corbett's desk, which distracted Corbett and increased her work-related stress, and because she took leave as an accommodation for her disability. RMTA, Gray, and Dean have interfered with Corbett's rights under the FMLA and have retaliated against her for engaging in protected conduct under the FMLA.

39.     As a result of Defendant's actions, Plaintiff has suffered a loss of compensation and benefits, as well as severe emotional distress, humiliation, embarrassment, injury to her reputation, and anxiety.

40.     Defendant's decisions in the course of, and in the termination of, Plaintiff's employment were taken and implemented in willful, blatant, and intentional disregard of, and in violation of, Plaintiff's rights under the ADA and the FMLA.

11

## COUNT ONE
## AMERICANS WITH DISABILITIES ACT

41.     The foregoing allegations are incorporated as if re-alleged herein.

42.     All of the acts of RMTA's employees alleged herein were undertaken in the course of, and within the scope of, their employment and on behalf of RMTA.

43.     Plaintiff was a qualified individual with a disability as that term is defined by the Americans with Disabilities Act.

44.     RMTA had actual knowledge of Corbett's disability, the medication that Corbett took for her disability, and the stressors that could trigger and exacerbate her disability.

45.     Apart from granting Corbett a brief medical leave, RMTA did not attempt to provide Corbett with any accommodation for her disability or engage in any interactive process to find an appropriate accommodation.

46.     After Corbett took medical leave, RMTA engaged in severe and pervasive conduct intended to exacerbate Corbett's disability.

47.     Defendant's stated reasons for Plaintiff's termination were and are pretextual.  In fact, Defendant discriminated against Plaintiff in the terms and conditions of her employment because of her disability, failed to engage in an interactive process with her to find an appropriate accommodation for her disability, and retaliated against her by subjecting

12

Plaintiff to a hostile work environment related to her disability and ultimately by terminating Plaintiff.

48. RMTA willfully violated Plaintiff's rights under the Americans with Disabilities Act.

49. As a direct and proximate result of RMTA's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including loss of compensation and benefits, embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense including attorneys' fees, medical expense, consequential damages, and other injury.

## COUNT TWO
## FMLA INTERFERENCE

50. The foregoing allegations are incorporated as if re-alleged herein.

51. All of the acts of Defendants and RMTA's employees alleged herein were undertaken in the course of, and within the scope of, their employment and on behalf of Defendants.

52. Corbett is an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2). RMTA, Gray, and Dean are each an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I) and (iii).

53. During all times pertinent to this Complaint, the Defendants controlled the terms and conditions of Corbett's employment.

13

54.     Corbett had a right, under the FMLA, 29 U.S.C. § 2612(a)(1), to twelve workweeks of leave during any twelve month period for family and health-related matters. Upon her return from such leave, the FMLA, 29 U.S.C. § 2614(a), entitled Corbett to be restored by her employer to the position of employment she held when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment

55.     The Defendants interfered with Corbett's FMLA rights and entitlements when, after Corbett returned from FMLA leave, Defendants stripped her of many of her duties, demoted her and changed her reporting structure, in violation of 29 U.S.C. § 2614(a).

56.     The acts and practices of Defendant and its managers complained of herein were willful and interfered with, restrained, and/or denied Plaintiff's exercise of her rights or her attempt to exercise her rights under the FMLA in violation of 29 U.S.C. §§ 2615(a)(1) and (2).

57.     Corbett has been damaged by Defendant's actions, including, but not limited to, loss of employment, compensation, and employment related benefits.

## COUNT THREE
## FMLA RETALIATION

58.     The foregoing allegations are incorporated as if re-alleged herein.

14

59.     All of the acts of Defendants and RMTA's employees alleged herein were undertaken in the course of, and within the scope of, their employment and on behalf of Defendants.

60.     Corbett is an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2). RMTA, Gray, and Dean are each an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I) and (iii).

61.     During all times pertinent to this Complaint, the Defendants controlled the terms and conditions of Corbett's employment.

62.     Corbett had a right, under the FMLA, 29 U.S.C. § 2612(a)(1), to twelve workweeks of leave during any twelve month period for family and health-related matters. The FMLA, 29 U.S.C. §§ 2614(a)(2) and 2615(a)(2), prohibits an employer from taking adverse employment action against an employee because the employee took FMLA leave, a protected activity.

63.     The Defendants retaliated against Corbett because she had engaged in conduct protected by the FMLA by, among other things, shunning her, subjecting her to far stricter scrutiny than other workers, falsely accusing her of errors, by creating a hostile work environment intended to exacerbate her depression, anxiety, and panic disorders, by giving her written notices and a "final written notice" when she refused to quit, and ultimately by terminating her employment.

64.     The acts and practices of Defendants complained of herein were willful and in violation of 29 U.S.C. §§ 2615(a)(1) and (a)(2).

65.     Corbett has been damaged by Defendant's actions, including, but not limited to, loss of employment, compensation, and employment related benefits.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Marian Corbett, by counsel, prays that this Court award her the following relief:

A. That the Court enter judgment against the Defendants declaring that the acts and practices complained of herein are violations and willful violations of the Americans with Disabilities Act, U.S.C. §12101, *et seq.* and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615, *et seq.*;

B. That she be awarded damages against Defendants RMTA, Gray, and Dean, in an amount equal to her wages, salary, employment benefits, bonuses, and other compensation lost as a result of Defendants' wrongful conduct in violation of the FMLA in an amount to be determined at trial but not less than $75,000, plus interest at the prevailing rate from the date of her termination;

C. That she be awarded liquidated damages against Defendants RMTA, Gray, and Dean, in an amount equal to her damages under the FMLA for lost wages, salary, employment benefits, bonuses, and other compensation, and including any award of interest;

D. That the Court issue a mandatory injunction directing Defendant RMTA to reinstate Plaintiff to a position of equal duties and responsibilities as Plaintiff would have received but for RMTA's conduct, with equal pay and benefits, or, in the alternative, for an award of judgment for front pay and benefits under the ADA;

E. That she be awarded compensatory damages in an amount to be proved at trial, but not less than $150,000;

F. That she be awarded interest on the amount awarded at trial at the prevailing rate;

G. That she be awarded her costs and attorney's fees in this matter; and

H. That she be awarded such other and further relief as the Court deems appropriate.

**PLAINTIFF REQUESTS A TRIAL BY JURY.**

Respectfully submitted,

MARIAN CORBETT

By Counsel

Blackwell N. Shelley, Jr. (VSB #28142)
Timothy E. Cupp (VSB # 23017)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond, VA 23220
(804) 644-9700
(804) 278-9634 [fax]
shelley@scs-work.com
cupp@scs-work.com
*Counsel for Plaintiff*

17