IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARIAN CORBETT, )
)
        Plaintiff, )
)
v. ) Civil Action No. 3:16cv470–HEH
)
RICHMOND METROPOLITAN )
TRANSPORTATION AUHTORITY, )
*et al.*, )
)
        Defendants. )

## MEMORANDUM OPINION
(Motion to Dismiss)

Plaintiff Marian Corbett ("Plaintiff") brings suit against her former employer, Defendant Richmond Metropolitan Transportation Authority ("RMTA"), and two former coworkers, Defendants Angela Gray ("Gray") and Joi Dean ("Dean"). According to Plaintiff, the RMTA, Gray, and Dean (collectively "Defendants") discriminated against Plaintiff in violation of the Americans with Disabilities Act ("ADA"), impermissibly interfered with Plaintiff's rights in violation of the Family and Medical Leave Act ("FMLA"), and retaliated against her in violation of the FMLA.

This matter comes before the Court on Defendants' Motion to Dismiss (ECF No. 5). Defendants seek dismissal, arguing that Plaintiff has failed to plead sufficient factual material in support of her claims under the ADA and the FMLA. Further, Defendants aver Plaintiff may not maintain suit against Gray or Dean in their individual capacities under the FMLA. For the reasons set forth below, the Court will grant in part and deny in

part Defendants' Motion.[1] Each side has filed memoranda supporting their respective positions.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to her. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the four corners of Plaintiff's Complaint. Viewed through this lens, the facts are as follows.

In 2002, the RMTA hired Plaintiff as an administrative assistant to then-General Manager Michael Berry ("Berry"). (Compl. ¶ 11, ECF No. 1.) During her tenure, Plaintiff received not only positive performance evaluations, but also performance bonuses. (*Id.* ¶ 12.) According to Plaintiff, she enjoyed working for the RMTA and met the RMTA's legitimate expectations for her performance. (*Id.*)

In 2008, Plaintiff was diagnosed with depression. (*Id.* ¶ 13.) She also suffered from panic attacks and anxiety as a result of the depression. (*Id.*) Plaintiff took prescriptions to keep her symptoms under control, but high levels of stress or emotional trauma could exacerbate her symptoms. (*Id.*) Combined, these disorders substantially

---

[1] The Court does not address Defendants' argument that Plaintiff is not entitled to punitive damages. Plaintiff stated in her memorandum opposing Defendants' Motion to Dismiss that the Complaint contained a scrivener's error asking for punitive damages. (Pls.' Mem. Opp'n Mot. Dismiss 12 n.1, ECF No. 8.) Accordingly, Plaintiff does "not seek[] punitive damages against the RMTA under the ADA." (*Id.*)

2

affected her cognitive thinking and functioning, impaired her ability to interact with others, and interfered with her ability to sleep. (*Id.*)

In 2012, Berry retired. The RMTA hired defendant Angela Gray as the new General Manager, a position later retitled Chief Executive Officer. (*Id.* ¶¶ 14, 17.) Plaintiff pleads that she continued as administrative assistant and reported to Gray, just as she had served under Berry. (*Id.*) In September 2013, the RMTA contracted with defendant Joi Dean as a "peer-level coworker." (*Id.* ¶ 15.) Also in September 2013, another RMTA employee, Linda McElroy ("McElroy"), resigned. (*Id.* ¶ 16.) Gray divided McElroy's job duties between Plaintiff and Dean. (*Id.*) McElroy's responsibilities had included handing public relations matters and other functions related to communications with the RMTA Board. (*Id.*)

Plaintiff and Gray developed a close working relationship after Gray was hired at the RMTA. (*Id.* ¶ 18.) In fact, Gray began asking Plaintiff to accompany her on social outings unrelated to work. (*Id.*) This included furniture shopping, getting coffee, joining her for lunch during the week and brunch on the weekends, as well as participating in a Thanksgiving dinner at Keswick Hall near Charlottesville, Virginia. (*Id.*)

In addition to these social outings, Gray would often sit at Plaintiff's desk during the day and discuss matters unrelated to work. (*Id.* ¶ 19.) Plaintiff eventually confided in Gray that Plaintiff suffered from depression, anxiety, and a panic disorder, controlled with a prescription for Prozac. (*Id.*)

These visits allegedly caused Plaintiff to fall behind in her work and made it increasingly difficult to accomplish tasks. (*Id.* ¶ 20.) According to Plaintiff, she

3

diplomatically attempted to inform Gray that her presence was distracting and counterproductive. (*Id.*) Apparently, Gray "did not get the message." (*Id.*) Plaintiff maintains that she became less productive and unable "to correct the cause of the problem without alienating her superior." (*Id.*)

In May 2014, Plaintiff conferred with Sheryl Johnson ("Johnson") in Human Resources regarding Gray's "constant presence" at Plaintiff's desk. (*Id.* ¶ 21.) Johnson had worked as a Human Resources manager at the RMTA since approximately 2001, and knew of Plaintiff's depression and related disorders. (*Id.*) Plaintiff informed Johnson that Gray's socializing interfered with Plaintiff's work and that her inability to get Gray to stop exacerbated her disabilities. (*Id.*) Plaintiff asked that Johnson keep their conversation confidential, but sought her assistance in encouraging Gray to leave Plaintiff alone so that she could perform her work. (*Id.*)

Despite Plaintiff's request to keep the complaint confidential, Johnson reported Plaintiff's concerns to Gray. (*Id.* ¶ 22.) As a result, Gray became more distant towards Plaintiff. (*Id.* ¶ 23.) According to Plaintiff, Gray also scrutinized Plaintiff's "every move" and complained about Plaintiff's work. (*Id.*) Plaintiff contends that Gray did this intentionally, knowing that such actions would aggravate Plaintiff's symptoms. (*Id.*) Although Gray increased her scrutiny over Plaintiff, the RMTA paid Plaintiff a bonus in June 2014. (*Id.* ¶ 24.)

In August 2014, Gray's actions caused Plaintiff to seek medical help from her physician. (*Id.* ¶ 25.) Plaintiff's doctor suggested that Plaintiff take medical leave. (*Id.*) Plaintiff requested—and the RMTA granted—medical leave for Plaintiff under the

4

FMLA to address her depression and anxiety. (*Id.* ¶ 27.) Plaintiff ultimately took four weeks of approved FMLA leave. (*Id.* ¶ 28.)

Plaintiff returned to work on September 15, 2014. (*Id.*) Plaintiff was informed by Johnson that her job duties and reporting requirements had changed during her absence. (*Id.* ¶ 29.) Specifically, Plaintiff would no longer report to Gray, but to Dean instead, who had been promoted to Chief of Staff. (*Id.* ¶ 30.) Further, Plaintiff had been relieved of her responsibilities related to communicating with the Board and fielding public relations calls. (*Id.*) Additionally, Gray refused to speak to Plaintiff after she returned to work, even though Gray had to walk past Plaintiff's desk to enter or exit the office. (*Id.* ¶ 31.) Plaintiff contends that Gray knew such behavior could aggravate Plaintiff's depression, anxiety, and panic disorder. (*Id.*)

In the fall of 2014, Plaintiff was called into a meeting with Johnson and Dean. (*Id.* ¶ 33.) Dean accused Plaintiff of "making mistakes." (*Id.*) When asked for specifics about those mistakes, neither Dean nor Johnson provided any details. (*Id.*) According to Plaintiff, Dean and Johnson admitted that they had no documentation to substantiate the claim that Plaintiff had been making mistakes. (*Id.*) Plaintiff maintains that these alleged mistakes were "purely pretextual and were part of a plan by Defendants to bring about [Plaintiff]'s termination." (*Id.* ¶ 34.)

In January 2015, Plaintiff inadvertently sent a calendar event to members of the Board with an incorrect date and time. (*Id.* ¶ 35.) Although she corrected her mistake, she received a written warning. (*Id.*) According to Plaintiff, others had made similar mistakes in the past but had neither been warned nor disciplined. (*Id.*) Plaintiff believes

5

that the written warning was created by Defendants as a false justification for Plaintiff's eventual termination. (*Id.*)

That same month, Dean and Johnson met with Plaintiff and suggested that she take early retirement. (*Id.* ¶ 36.) Plaintiff declined to do so. (*Id.*) On January 27, 2015, Defendants gave Plaintiff a final written warning and suspended her for two days. (*Id.*) Plaintiff claims this final written warning also served as a pretext for her dismissal. (*Id.*)

In March 2015, Plaintiff failed to put a telephone call through to Gray, believing that Gray was already on a scheduled conference call. (*Id.* ¶ 37.) On March 31, 2015, Plaintiff was terminated for her failure to do so. (*Id.*)

Plaintiff's Complaint contains three counts. Count I alleges violations of the ADA. Plaintiff claims that Defendants violated the ADA by 1) discriminating against Plaintiff in terminating her employment; 2) failing to provide Plaintiff with a reasonable accommodation; 3) failing to participate in the interactive process; and 4) retaliating against Plaintiff. Count II maintains that Defendants unlawfully interfered with Plaintiff's FMLA rights by relieving her of duties, changing her reporting structure, and demoting her. Count III seeks redress for retaliation under the FMLA.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

6

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Defendants move to dismiss the ADA count and the FMLA counts. Each will be discussed in turn.

#### a. ADA Claims

##### i. Discriminatory Termination

Defendants first argue that Plaintiff has failed to plead a plausible claim of discriminatory termination under the ADA. (Defs.' Br. Supp. Mot. Dismiss ("Defs.' Br.") 4–6, ECF No. 6.) To state an ADA discrimination claim, a plaintiff must show that (1) she was a qualified individual; (2) was discharged; (3) was fulfilling the legitimate expectations of her employer; and (4) the circumstances of the discharge raise a reasonable inference of unlawful discrimination. *Reynolds v. Am. Nat'l Red Cross*, 701

7

F.3d 143, 150 (4th Cir. 2012). Defendants challenge the sufficiency of the factual support for the third and fourth elements.

With respect to the third element, Plaintiff has adequately pleaded that she was fulfilling the legitimate expectations of her employer. The Complaint alleges that during her tenure at the RMTA, Plaintiff received not only positive reviews, but also performance bonuses. (Compl. ¶ 12.) This includes a bonus paid in June 2014. (*Id.* ¶ 24.) This June 2014 bonus came in the aftermath of Plaintiff's complaints about Gray to Johnson—the conversation that apparently served as the genesis of the chain of events that allegedly led to Plaintiff's termination. Viewed in the light most favorable to the Plaintiff, such positive reviews and bonuses support a reasonable inference that Plaintiff was meeting the legitimate expectations of her employer at the time of her termination.

Plaintiff has also alleged sufficient facts to make a plausible claim that the circumstances of her discharge raise a reasonable inference of unlawful discrimination. According to the Complaint, after Plaintiff discussed Gray's behavior with Johnson, Gray subjected Plaintiff's performance to more strict scrutiny. (Compl. ¶ 23.) After Plaintiff returned from FMLA leave, Dean and Johnson confronted her about the quality of her work. However, the Complaint maintains that neither Dean nor Johnson could offer any specifics. (*Id.* ¶ 33.) Further, Plaintiff alleges she was chastised more harshly than others for sending out an erroneous calendar invite to the Board. (*Id.* ¶ 35.) Arguably, such disparate discipline is probative of pretext. *See Dotson v. Pfizer,* 558 F.3d 284, 297 (4th Cir. 2009) (stating that firing one employee while declining to discipline others involved in similar conduct could indicate that the firing was pretextual and a violation of the

8

FMLA). Although not every workplace slight amounts to discrimination, Plaintiff, has pleaded sufficient facts to warrant a reasonable inference of unlawful discrimination, allowing her claim of discriminatory termination to survive at this stage of the proceedings.

### ii. Failure to Accommodate

The second strand of Plaintiff's ADA claim is her assertion that Defendants failed to accommodate her disability. (Defs.' Br. 7–8.) To support a failure to accommodate claim, a plaintiff must show that she was disabled, the employer had notice of the disability, plaintiff could perform the essential functions of the job with a reasonable accommodation, and the employer refused to provide such an accommodation. *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 414 (4th Cir. 2015). Defendants argue that Plaintiff's complaint demonstrates that she was provided her requested accommodation, specifically that Gray stop visiting her desk so frequently during the work day. Plaintiff rejoins that Defendants failed to honor her accommodation request, because according to the complaint, her conversation was revealed to Gray.

While Plaintiff wished to keep the conversation private, she offers no facts to support her contention that such a request would have served as a reasonable accommodation or that she could have satisfactorily performed the essential functions of her job had the conversation been kept confidential. Plaintiff contends that Gray's constant presence at her desk diverted her attention and caused her to fall behind on work. However, Plaintiff concedes that Johnson took affirmative steps to alleviate the distraction. Plaintiff has failed to plead a plausible claim of failure to accommodate.

### iii. Failure to Engage in an Interactive Process

Next, Defendants challenge the sufficiency of the factual allegations supporting plaintiff's claim that Defendants did not participate in an interactive process, in contravention of the ADA. (Defs.' Br. 8–10.) The interactive process typically requires "that employers make a good-faith effort to seek accommodations." *Williamson v. Bon Secours Richmond Health Sys., Inc.*, 34 F. Supp. 3d 607, 613 (E.D. Va. 2014) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315 (3d Cir. 1999)). Persistent refusal to engage in discussions or take any remedial action could arguably constitute failure to engage in the interactive process. *See, e.g., Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581–82 (4th Cir. 2015).

Even if all reasonable inferences are drawn in Plaintiff's favor, she has failed to plead sufficient facts to raise a plausible claim that Defendants failed to engage in an interactive process. Plaintiff herself identified and requested a specific accommodation specifically that Gray stop visiting her desk during the work day. Johnson asked Gray to do exactly that. Gray complied. The Complaint does not allege that Plaintiff requested any form of accommodation which was rejected out of hand by Defendants prior to her termination. Accordingly, Plaintiff has failed to plead factual allegations showing that Defendants did not make a good faith effort to seek an accommodation for Plaintiff. The Court will dismiss that portion of Plaintiff's Complaint pertaining to engagement in an interactive process.

### iv. ADA Retaliation

Also, Defendants seek dismissal of Plaintiff's ADA retaliation claim. (Defs.' Br. 9–10.) A prima facie showing of retaliation under the ADA requires a plaintiff to show that she engaged in a protected activity, that she suffered an adverse employment action, and that a causal link between the two exists. *Reynolds*, 701 F.3d at 154. Defendants do not dispute that Plaintiff has pleaded the first two elements, but rather challenge the sufficiency of the Complaint on the causal link element. (Defs.' Br. 10.)

Here, the Complaint states that in the immediate aftermath of Plaintiff approaching Johnson to request an accommodation, Plaintiff was subjected to increased scrutiny. (Compl. ¶ 23.) Plaintiff alleges that Gray knew of Plaintiff's disorders and intentionally engaged in activity calculated to exacerbate Plaintiff's conditions. (*Id.*) Additionally, after Plaintiff returned from her FMLA leave, Johnson and Dean called Plaintiff into a meeting and accused her of "making mistakes." (*Id.* ¶ 33.) According to Plaintiff, neither individual substantiated those claims. (*Id.*) Plaintiff also recounts that simple mistakes resulted in warnings and suspensions, culminating in Dean suggesting Plaintiff take early retirement. (*Id.* ¶¶ 35–36.)

Affording all reasonable inferences to Plaintiff, as required under Rule 12(b)(6), these events, beginning in the immediate aftermath of Plaintiff's meeting with Johnson to request an accommodation, could be reasonably construed as a continuous chain of events meant to punish Plaintiff for engaging in protected activity. Defendants' contention that Plaintiff's mistakes alone led to her termination is irrelevant to the

Court's analysis at this juncture. Therefore, while perhaps thin, Plaintiff has pleaded sufficient facts to support a plausible ADA retaliation claim.

### b. FMLA Claims

Counts II and III seek redress for violations of the FMLA. As a threshold issue, Gray and Dean argue that they cannot be held liable under the FMLA in their individual capacities. Alternatively, Defendants contend that Plaintiff has not pleaded sufficient facts to state a claim for interference or retaliation in violation of the FMLA.

### i. Individual FMLA Liability

As an initial matter, Defendants argue that the FMLA prohibits suits against Gray and Dean in their individual capacities. (Defs.' Br. 12–15.) Specifically, Defendants contend that while an individual may be sued if acting in the interests of her employer, the structure of the statute suggests exclusion of public agencies. (*Id.* at 14.) The FMLA states that the term employer:

> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes—
>
> > (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> >
> > (II) any successor in interest of an employer;
>
> (iii) includes any "public agency", as defined in section 203(x) of this title; and
>
> (iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A).

12

The circuits are split on the question of whether a public official may be sued in his or her individual capacity under the FMLA. Three circuits hold that public officials may be sued in their individual capacities, while only two hold to the contrary. *Compare Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012) (holding that public official may be sued in an individual capacity), *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006) (same), *and Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002) (same), *with Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003) (rejecting the claim that a public official may be sued in an individual capacity) *and Wascura v. Carver*, 169 F.3d 683 (11th Cir. 1999) (same). In the Fourth Circuit, "whether the FMLA imposes liability on employee supervisors in their individual capacities is an open question." *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (unpublished).

While courts within the Fourth Circuit have not reached a consensus, this Court has twice found that public officials may be sued in their individual capacities under the FMLA. *See Ainsworth v. Loudon Cty. Sch. Bd.*, 851 F. Supp. 2d 963, 974 (E.D. Va. 2012); *Weth v. O'Leary*, 796 F. Supp. 2d 766, 775–77 (E.D. Va. 2011). While not binding, the Court finds these decisions informative and acknowledges that it is prudent to "avoid issuing conflicting orders." *Feller v. Brock*, 802 F.2d 722, 728 (4th Cir. 1986). For the reasons stated below, the Court joins the majority and holds that the FMLA allows for suits against public officials in their individual capacity.

The Court first looks to the text of the statute for its plain meaning. *See Ramey v. Dir., Workers' Comp. Program*, 326 F.3d 474, 476 (4th Cir. 2003). The text of the statute states that an employer includes "any 'public agency.'" 29 U.S.C. §

13

2611(4)(A)(iii). It also explicitly includes "any person who acts, directly or indirectly, in the interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(I). The most straightforward reading of the text of Section 2611(4)(A) compels the conclusion that the individual liability provision and public agency provision should be read in tandem, allowing individual liability for public officials.

Defendants contend that the structure of the FMLA statute precludes individual liability for public officials. (Defs.' Br. 14.) They maintain that Congress did not intend for individual liability to extend to public officials as evidenced by the public agency provision being located in a separate clause after the individual liability provision. (*Id.*) Only a minority of courts agree with this construction, *see, e.g., Mitchell*, 343 F.3d 811, 829–33, and this Court finds it unconvincing. Subsections (i) through (iv) all modify the term "employer." The use of the word "and" at the end of subsection (iii) indicates that all four subsections are intended to be read inclusively. *Ainsworth*, 851 F. Supp. 2d at 973; *Weth*, 796 F. Supp. 2d at 777. Therefore, based on the plain language of the FMLA, this Court finds that Plaintiff may sue Gray and Dean in their individual capacities.

### ii. Interference

Turning to the substance of Count II, Defendants contend that Plaintiff has failed to state an actionable claim that Defendants unlawfully interfered with Plaintiff's FMLA rights by demoting her upon return from her leave of absence. (Defs.' Br. 16–17.) To state a claim for FMLA interference, a plaintiff must show that (1) she was an eligible employee; (2) the defendant was an FMLA-defined employer; (3) plaintiff was entitled to leave under the statute; (4) plaintiff gave notice to the employer that she would take

FMLA leave; and (5) the employer denied the plaintiff her FMLA benefits. *Ainsworth*, 851 F. Supp. 2d at 975. Defendants move to dismiss on the basis that Plaintiff has failed to plead sufficient facts to satisfy the fifth element. (Defs.' Br. 16–17.)

The FMLA provides that an employee must be restored upon return from leave "to either the same position that she held before her leave or an equivalent one." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 723 (4th Cir. 2013). However, "the FMLA provides no absolute right to restoration to a prior employment position." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 549 (4th Cir. 2006). Under federal regulations, an equivalent position is one that is "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, prerequisites and status." 29 C.F.R. § 825.215(a). While an equivalent position "must involve the same or substantially similar duties and responsibilities," *Id.*, this requirement "does not extend to de minimis, intangible, or unmeasurable aspects of the job." 29 C.F.R. § 825.215(f).

The Fourth Circuit has been consistently clear that small changes in an employee's duties upon return from leave do not violate the FMLA. In *Montgomery v. Maryland*, the Fourth Circuit affirmed the district court's dismissal of an FMLA interference claim at the Rule 12(b)(6) stage. *Montgomery v. Maryland*, 266 F.3d 334, 341–42 (4th Cir.2001), *vacated on other ground*, 535 U.S. 1075 (2002); *see Montgomery v. Maryland*, 72 F. App'x 17, 19–20 (4th Cir.2003) (reaffirming reasoning and holding on FMLA interference claim). The plaintiff in that case was an "administrative aide" before her FMLA leave and returned to the position of "secretary" in another department. 226 F.3d at 336. The court held that this was merely a de minimis change in position despite her

15

allegation that her previous duties were "truly administrative" while her new position involved only "the simplest, most menial of clerical functions." *Id.* at 341; 72 F. App'x at 20. The Fourth Circuit is not unique in this application of the FMLA; other circuits apply the same reasoning. *See, e.g., Brands v. First Transit, Inc.*, 278 F. App'x 722, 725 (9th Cir. 2008) (finding no FMLA interference where bus driver returned to a different bus route); *Smith v. E. Baton Rouge Par. Sch. Bd.*, 453 F.3d 650, 652 (5th Cir. 2006) (finding no FMLA interference where plaintiff's new position still involved accounting but no longer required travel to various schools); *Mitchell v. Dutchmen Mfg., Inc.*, 389 F.3d 746, 749 (7th Cir. 2004) (finding no FMLA interference where plaintiff continued to work in the same manufacturing department but now had to use small hand tools that were previously unnecessary).

Here, Plaintiff claims that after she returned from FMLA leave, she no longer reported to Gray, but to Dean. (Compl. ¶ 30.) Additionally, Plaintiff no longer was responsible for communicating with the Board and handling public relations calls. (*Id.*) Even taking Plaintiff's allegations as true and viewing them in the light most favorable to her, Plaintiff has failed to plead a plausible claim of FMLA interference. Plaintiff has proffered no facts to indicate that her pay, benefits, or working conditions changed in any way upon her return from FMLA leave. Her position after her FMLA leave was substantially similar to her prior position. All of the changes that Plaintiff alleges fall squarely into the de minimis category and do not constitute FLMA interference. *See Csicsmann v. Sallada*, 211 F. App'x 163, 166 (4th Cir. 2006) (finding no FMLA violation where plaintiff's salary, title, bonus eligibility, health care, and retirement benefits

16

remained unchanged). Accordingly, the Court will dismiss Plaintiff's FMLA interference claim.

### iii. FMLA Retaliation

Lastly, Plaintiff contends in Count III that Defendants retaliated against her for taking protected leave, in violation of the FMLA. (Compl. ¶¶ 58–65.) Like the ADA, the FMLA prohibits retaliation against employees for engaging in protected activity. To state a claim for retaliation under the FMLA, a plaintiff must show that she engaged in protected activity and suffered an adverse employment action that was casually linked to the protected activity. *Yashenko*, 446 F.3d at 551. As they did with the ADA retaliation claim, Defendants argue Plaintiff has failed to plead sufficient facts linking her protected activity with adverse employment action. (Defs.' Br. 17–18.)

Here, Plaintiff pleads that Defendants accused Plaintiff of making unspecific and unsupported mistakes. (Compl. ¶ 33.) This came shortly after Plaintiff returned from FMLA leave to an allegedly reduced role in the office. (*Id.* ¶¶ 28, 30.) Plaintiff concedes that she made some minor mistakes, but maintains that they resulted in unwarranted disciplinary action. (*Id.* ¶ 35.) Viewed in the light most favorable to the Plaintiff, it is plausible that Defendants' alleged action was a retaliatory response to Plaintiff's protected activity. Thus, Defendants' motion to dismiss Plaintiff's FMLA retaliation claim will be denied at this stage.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss will be granted as to the ADA failure to accommodate claim; the ADA failure to engage in an interactive process claim; and the FMLA interference claim.

Defendants' Motion to Dismiss will be denied as to the ADA discrimination claim; the ADA retaliation claim; and the FMLA retaliation claim.

An appropriate Order will accompany this Memorandum Opinion.

                                           /s/
                               Henry E. Hudson
                               United States District Judge

Date: Aug 25 2016
Richmond, Virginia